CHANHASSEN CHIROPRACTIC CENTER, P.A., Petitioner, Appellant,

v.

The CITY OF CHANHASSEN, Respondent.

No. C0–02–1724.

Court of Appeals of Minnesota.

June 10, 2003.

Kirk Anthony Schnitker, Jon William Morphew, Schnitker & Associates, P.A., Minneapolis, MN, for appellant.

Thomas M. Scott, Eagan, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, MINGE, Judge, and HUDSON, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Respondent's city manager denied appellant's claim for relocation benefits and advised it of the right to an appeal to the Chanhassen City Council. Appellant sought mandamus relief from the district court, arguing that the city failed to appoint an impartial hearing officer to hear the appeal. Because the district court properly concluded that the city had not violated a clear duty in the relocation assistance hearing process, we affirm the court's denial of the writ of mandamus.

## FACTS

Petitioner Chanhassen Chiropractic Center (center) entered into a lease for office space in a building acquired by respondent City of Chanhassen for future development of a park and library. Upon expiration of the lease term, the center continued to lease the space on a month-to-month basis.

The lease, which was signed by center president Donald Kristenson and Chanhassen's mayor and city manager, allowed the center to assign the lease only with the city's prior written consent. The city also reserved the discretion to withhold consent. The lease specifically stated that any change in the ownership of the lessees' shares of voting stock constituted a transfer and assignment of the lease requiring the city's prior written consent. If certain specified conditions were met, the city agreed not to unreasonably withhold consent to assign the lease if it was notified at least 30 days prior to the effective date of assignment. The lease also required that the center complete estoppel certificates within ten days of each request by the city.

On or about January 11, 2002, less than three months before the anticipated termination of the lease, the center's sole share-

holder, Dr. Kristenson, sold his shares to Dr. Susan Lecy. The agreement for purchase and sale of the center did not expressly refer to relocation benefits, but the parties contemplated a relocation of the business, as evidenced by a contingency in the agreement that Dr. Lecy "shall have procured a satisfactory lease agreement for relocation" of the center effective April 1, 2002. Dr. Kristenson was to deliver an estoppel certificate confirming that the center was not in default under its lease with the city. When Dr. Lecy requested a "landlord's estoppel certificate and consent to assignment of lease" from the city, City Manager Todd Gerhardt, responding for the city provided a notarized estoppel certificate indicating that the tenant was not in default and that the lease would expire March 31, 2002. With regard to consent to assignment of the lease, however, Gerhardt stated that the transfer of stock ownership was an assignment of the lease and that the city would consent to the assignment only if Dr. Lecy would waive and release the city from any claim for relocation benefits. The city asked that Drs. Kristenson and Lecy sign the agreement.

On February 22, 2002, Dr. Lecy responded to Gerhardt that she considered the city liable for her relocation expenses and that she did not intend to sign the waiver of relocation benefits. She also did not pay rent in January or February. Later in February, Gerhardt wrote Drs. Lecy and Kristenson, notifying them that the center was in default for nonpayment of rent and warning them that if they failed to pay by March 6, 2002, eviction proceedings would commence and the lease would terminate on April 1, 2002. On March 8, the city commenced an eviction proceeding, claiming that the center owed three months' rent and was in breach of the lease regarding assignment.

The center notified the city that it would vacate the premises before March 21, 2002, so the eviction hearing was cancelled. The center attempted settlement of its relocation benefits claim but on May 7, it made a request for an administrative hearing. On May 14, Gerhardt denied the center's relocation benefits claim and offered to forgive two months' past rent to settle the matter. In the denial of benefits, Gerhardt gave the center notice that it could request an appeal to the Chanhassen City Council. In a letter from the city attorney, the center was given various dates for an appeal hearing before the Chanhassen City Council. The center replied that the city council was not an appropriate tribunal. It then sought relief in the district court by petition for a preemptive writ of mandamus compelling the city to select a fair and impartial hearing officer to hear the relocation benefits appeal. After a hearing, the district court denied the petition for a writ of mandamus. The center appeals from the order denying its petition.

### ISSUE

Did the district court erroneously conclude that the city had not violated a clear duty by its selection of the city council as the "hearing officer" to decide appellant's relocation benefits appeal?

### ANALYSIS

▇▇▇▇ A writ of mandamus is a remedy to compel any person, corporation, public functionary, or tribunal, to perform some duty required by law, where the party seeking relief has no other legal remedy, and the duty sought to be enforced is clear and indisputable. *Bd. of Comm'rs of Knox County v. Aspinwall*, 65 U.S. 376, 383, 24 How. 376, 16 L.Ed. 735 (1860). A writ of mandamus "shall not issue in any case where there is a plain, speedy, and adequate remedy in

the ordinary course of law." Minn.Stat. § 586.02 (2002). Mandamus is an extraordinary remedy based on equitable principles and is awarded at the discretion of the district court. *Coyle v. City of Delano*, 526 N.W.2d 205, 207 (Minn.App.1995). A reviewing court will overturn the district court's order on a petition for issuance of a writ of mandamus only when there is no evidence on which the district court could have reasonably based its decision. *Id.*

■ Before a writ of mandamus may issue, the petitioner must meet the standing requirements of Minn.Stat. §§ 586.01–.02 (2002). *Coyle*, 526 N.W.2d at 207. To do so, the petitioner must demonstrate that (1) the official has failed to exercise a duty imposed by law; (2) due to this failure, the petitioner is specifically injured by a public wrong; and (3) there is no adequate alternative legal remedy. *Id.*

The Code of Federal Regulations sets up a three-step process for relocation-benefit decision-making. 49 C.F.R. § 24.10 (2002). This court has recently addressed whether Minnesota should follow the federal appeal process for relocation benefits and decided that Minnesota's process must be dictated by common law and constitutional procedural-due-process principles. *In re Relocation Benefits of James Bros. Furniture*, 642 N.W.2d 91, 96–97, 103–04 (Minn.App.2002), *review denied* (Minn. June 18, 2002).

The center concedes that the federal process complies with minimum standards of due process. It provides for three basic steps. First, there is the initial agency decision on the request for benefits. Second, an aggrieved person may file a written appeal of the initial agency decision. 49 C.F.R. § 24.10(b). Upon receipt of the written appeal, the agency or other appointing authority then selects an official to consider the appeal:

The Agency official conducting the review of the appeal shall be either the head of the Agency or his or her authorized designee. However, the official shall not have been directly involved in the action appealed.

*Id.* § 24.10(h) (2002). Third, if the official conducting the appeal does not grant the full relief requested, the official must explain the decision and "advise the person of his or her right to seek judicial review." *Id.* § 24.10(g).

The center contends that the city council has an inherent conflict of interest that prevents it from serving as the official conducting the appeal. Specifically, it claims that the council has a pecuniary interest in the matter, a conflict of interest with the displaced person, or is a party to the action being appealed.

■ The center correctly states that its constitutional due process protections include the right to an "impartial" decisionmaker. *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 565 (Minn. App.1994), *review denied* (Minn. Feb. 14, 1995). While an impartial decision-maker is essential to due process, prior involvement "in some aspects of a case" will not necessarily bar an official from acting as a decision-maker. *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970). Furthermore, the "rule of necessity" may allow an officer to serve in a decision-making capacity despite bias. *Ginsberg v. Minn. Dept. of Jobs & Training*, 481 N.W.2d 138, 141 (Minn.App. 1992) (stating that officials involved "in the particular aspect of a case under review" should not also participate in the decision-making process but that "rule of necessity" may allow even biased officers to hear case), *review denied* (Minn. Apr. 9, 1992). In short, whether a hearing officer is impartial is a fact-specific inquiry that de-

pends on the context in which the appeal is heard.

■ Here, the record contains no evidence that the current city council was involved in the center's application for relocation benefits or the city manager's denial of those benefits. Counsel for the parties made assertions and arguments in district court, but the facts relevant to the issue of partiality are not in the form of affidavits or testimony and are definitely disputed. The center argued to the district court that the city council has been "involved in this since day one." The city argued to the district court that the city manager who denied the relocation benefits does not sit on the city council and that the city council had "absolutely no involvement in the determination of the eligibility for relocation benefits." Absent a factual basis establishing the city council's partiality as to the specific issues appealed, this court cannot conclude that the city breached its clear duty to select a fair and impartial decision-maker to hear the appeal. *Cf. James Bros.*, 642 N.W.2d at 104 (considering facts adduced at hearing and decision made by hearing officer, there was no due process violation).

■ Mandamus also will not lie where an adequate legal remedy is available. Here, the center's legal remedy was, in the first place, an appeal to the city council. Had the center availed itself of that remedy, the hearing before the city council would have produced the record required for review of all issues by this court. Although the city council could not address the constitutional issues raised in this appeal, it could address the propriety of the initial denial of benefits by the city manager. *Naegele Outdoor Adver., Inc. v. Minneapolis Cmty. Dev. Agency*, 551 N.W.2d 235, 237 (Minn.App.1996) (final administrative decisions under MURA may only be reviewed by certiorari to this court as provided by Minn.Stat. § 606.01 (2000)).

## DECISION

The district court properly denied the writ of mandamus because the appellant did not make a showing of partiality or a breach of respondent's clear legal duty.

**Affirmed.**