INSTANT TESTING COMPANY, et al., petitioners, Appellants,

v.

COMMUNITY SECURITY BANK, Respondent,

Eagan Economic Development Authority, Respondent,

Barbara Alice Kopacek, et al., Respondents.

No. A05–1505.

Court of Appeals of Minnesota.

June 6, 2006.

## OPINION

HARTEN, Judge.*

Following a December 2003 commercial property closing in a redevelopment project, appellants Instant Testing Company and associated enterprises, in August 2004, requested additional relocation benefits. The request was denied by respondent, Eagan Economic Development Authority (EDA). Appellants then filed a motion in Dakota County district court for a determination of the amount of the claimed additional relocation benefits under Minn. Stat. § 117.232, subd. 2 (2004). The district court dismissed appellants' claims for failure to meet the necessary statutory requirements, finding that appellants were not tenants and had not rejected EDA's offer of benefits. Appellants challenge the judgment of dismissal, arguing that they fulfilled the statutory requirements. Because the district court properly concluded that appellants did not reject the offer of benefits as required by section 117.232, subdivision 2, we affirm the district court's dismissal.

## FACTS

Appellants Instant Testing Company and Allied Test Drilling are businesses formerly located at 3996 and 4000 Cedar Grove Parkway, Eagan [hereinafter Eagan properties]. Gordon Kopacek, is the owner of both appellant companies and the Eagan properties.[1] Kopacek is both appellants' owner and landlord.

In 2001, Kopacek began negotiations with Mark Parranto of Delta Development (Delta) to sell the Eagan properties. Kopacek claims that Parranto informed him

Kirk Schnitker, Jon W. Morphew, Schnitker & Associates, P.A., Minneapolis, MN, for appellants.

Robert B. Bauer, Matthew J. Schaap, Severson, Sheldon, Dougherty & Molenda, P.A., Apple Valley, MN, for respondent Eagan.

Considered and decided by TOUSSAINT, Chief Judge; DIETZEN, Judge; and HARTEN, Judge.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Kopacek was also named as a respondent because he had an interest in the land; but appellants' attorney represented both appellants and Kopacek individually in this matter.

that he would have to move his businesses by November 2002.

In the spring of 2002, Kopacek found a replacement location in Savage. In September 2002, Kopacek began constructing a new building at the replacement location. In March 2003, the proposed sale to Delta fell through. On or about 11 March 2003, Kopacek contacted the City of Eagan (City) about the sale of the Eagan properties to the City. On 19 March 2003, appellants sent a memo to their customers stating, "We will be moving to our new office and laboratory building on March 21, 2003."

In April 2003, Kopacek met with Dan Wilson, the acquisition consultant for EDA, to discuss sale of the Eagan properties. In addition to the $305,000 purchase price, Kopacek and Wilson agreed on $41,000 for relocation benefits. Kopacek claims that Wilson represented that $41,000 was the full amount of benefits available and that Wilson failed to provide relocation advisory services or claim assistance.

On 17 June 2003, EDA resolved to purchase the Eagan properties. Shortly thereafter, the parties executed a purchase agreement that included $41,000 for relocation benefits that the parties agreed would be in "full satisfaction of any and all claims for [relocation] benefits." The sale of the property closed in December 2003.

In August 2004, appellants sent EDA a letter requesting additional relocation benefits. In February 2005, the City and EDA issued a formal decision determining that appellants were not entitled to relocation benefits.

Rather than proceeding with an administrative appeal, appellants filed a motion in Dakota County district court for determination of the amount of additional relocation benefits. The district court dismissed appellants' action for any lack of subject-matter jurisdiction and standing. This appeal followed.

## ISSUE

Did the district court err in determining that it did not have subject-matter jurisdiction because appellants did not meet the statutory requirements necessary to bring an action under Minn.Stat. § 117.232, subd. 2 (2004)?

## ANALYSIS

■ Appellants contend that the district court erred by holding that it did not have subject-matter jurisdiction because appellants were ineligible to state a claim under Minn.Stat. § 177.232, subd. 2 (2004). This presents a question of law, which appellate courts review de novo because statutory interpretation and subject matter jurisdiction are questions of law. *Tischer v. Hous. and Redev. Auth. of Cambridge,* 693 N.W.2d 426, 428 (Minn.2005). If a court lacks subject-matter jurisdiction, the court must dismiss the action. Minn. R. Civ. P. 12.08. "Minnesota courts have consistently recognized that statutory requirements limiting a court's jurisdiction are threshold requirements that must be complied with before a court can exercise jurisdiction." *Irwin v. Goodno,* 686 N.W.2d 878, 880 (Minn.App.2004) (quoting *State v. Rojas,* 569 N.W.2d 418, 420 (Minn.App.1997)).

■ Generally, disputes involving relocation benefits are processed administratively and are subject to judicial review only by writ of certiorari to the court of appeals. *See Chanhassen Chiropractic Ctr. v. City of Chanhassen,* 663 N.W.2d 559, 563 (Minn.App.2003) (outlining the general administrative appeals process for relocation benefits claims).

Minn.Stat. § 117.232, subd. 2 (2004), creates an exception to the general rule requiring a writ of certiorari for judicial

review of local administrative determinations. It provides:

> In the event the purchaser and owner agree on the fair market value of the property but cannot agree on the appraisal fees and moving costs, the owner shall have the option to accept the offer for the property and reject the offer for the appraisal fees and moving costs. In addition thereto, the owner may, after due notice to all interested parties, bring a motion at a special term of the district court in the county in which the property is located for a determination of such moving costs and appraisal fees by the court.

Minn.Stat. § 117.232, subd. 2 (2004). It is undisputed that both parties agreed that EDA would pay appellants $41,000 in relocation benefits, which would be in "full satisfaction of any and all claims for benefits" under the Minnesota Uniform Relocation Act. *See* Minn.Stat. § 117.52–117.56 (2004). The property sale closed in December 2003. On 11 August 2004, appellants notified EDA that they were requesting additional relocation benefits.

It is clear that appellants did not reject the relocation benefits at any time through the closing; they accepted EDA's $41,000 offer of benefits in full satisfaction of all benefits claims. Section 117.232, subdivision 2, applies when the parties agree to the price of the property but disagree about the amount of moving costs.[2] Here, appellants and EDA formally agreed to both purchase price and relocation benefits. Because appellants did not reject EDA's offer covering relocation benefits at any time material, appellants became ineligible to invoke a determination by the district court under Minn.Stat. § 117.232, subd. 2.

■ In their brief and at oral argument before this court, appellants asserted that the waiver of any additional relocation benefits in the purchase agreement was invalid because it failed to meet statutory requirements.[3] Appellants rely on *In re Wren*, 699 N.W.2d 758 (Minn.2005), to support their argument. In *Wren*, the Richfield Housing and Redevelopment Authority (HRA) appealed an administrative law judge's determination that Wren was entitled to relocation benefits under the Minnesota Uniform Relocation Act. 699 N.W.2d at 758. During the negotiation process, HRA agreed to a $10,000 increase in the purchase price, and Wren waived his right to relocation benefits. *Id.* at 760–61. After moving, Wren claimed relocation benefits from HRA. *Id.* at 761. HRA requested a hearing and the administrative law judge found Wren's waiver invalid. *Id.* Both the court of appeals and supreme court affirmed. *Id.* at 765 and 685 N.W.2d 721, 725 (Minn.App.2004).

In *Wren*, the case went through the administrative process and then was appealed to the court of appeals by writ of certiorari. 699 N.W.2d at 761. Here, the issue of waiver arose only after the parties arrived at a full agreement and formally closed on it. Moreover, section 117.232, subdivision 2, does not specifically allow the district court to determine questions of

---

2. For the purposes of this case, we need not determine whether there is a difference between "moving costs" under Minn.Stat. § 117.232, subd. 2, and "relocation benefits" under the Minnesota Uniform Relocation Act, Minn Stat. §§ 117.52–117.56 (2004).

3. A valid waiver requires the owner to sign a waiver specifically describing the type and amounts of relocation assistance, services, payments, and benefits for which he or she is eligible; separately listing those being waived; and a statement that the agreement was voluntary and not made under the threat of eminent domain. Minn.Stat. § 117.521, subd. 1(b); *see also In re Wren*, 699 N.W.2d 758, 765 (Minn.2005).

waiver; it only provides a forum to decide the amount of relocation benefits when the appellant rejects the offer for relocation benefits. In *Wren*, the HRA exhausted the administrative appeals process before appealing. *See* 699 N.W.2d at 761. Appellant's reliance on *Wren* is misplaced.

We conclude that the district court correctly dismissed appellant's action. Given our determination, we need not address the separate issue of whether appellants were owners under Minn.Stat. 117.025, subd. 3.

## DECISION

Because appellants did not reject the EDA's offer of benefits as required by Minn.Stat. § 117.232, subd. 2, the district court did not err in determining that it lacked subject matter jurisdiction of appellant's action.

**Affirmed.**